IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENZYME CORPORATION, | |
| Plaintiff, | Case No. 08 C 5151 |
| v. | Magistrate Judge Martin C. Ashman |
| DISCOUNT DRUGS WISCONSIN, INC., | |
| Defendant. | |
| DISCOUNT DRUGS WISCONSIN, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| ABBOTT LABORATORIES, INC., | |
| Third-Party Defendant. | |

## MEMORANDUM OPINION AND ORDER

Genzyme Corporation ("Genzyme") sued Discount Drugs Wisconsin, Inc. ("Discount Drugs"), for breach of contract and conversion. Discount Drugs then filed a third-party complaint against Abbott Laboratories, Inc. ("Abbott"), alleging breach of contract and contribution. Currently before this Court is Abbott's Motion to Dismiss Discount Drugs' Complaint ("Motion" or "Abbott's Motion"). The parties consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c); N.D. Ill. R. 73.1. For the reasons stated below, the Court grants Abbott's Motion.

# I. Background

The parties involved are in the business of pharmaceuticals. Genzyme produces "immunology and transplant medicines." (Abbott's Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Ex. C at 1.) "Abbott . . . is, among other things, a leading manufacturer and marketer of a wide range of pharmaceutical products." (*Id.*) Discount Drugs is store selling food and drugs in the state of Maryland and the District of Columbia. (Discount Drugs' Compl. ("Compl.") ¶ 6.)

Discount Drugs' action against Abbott is based on a contract that the parties entered into on November 12, 2001 ("the First Contract"),[1] and subsequently amended on February 1, 2002 ("the Amendment").[2] (Compl. ¶ 12.) The Contract implemented a program, designed by Abbott, that offered Discount Drugs rebates for its sale of cyclosporine—the product at issue—which Abbott purchased from Genzyme. (*Id.* at ¶ 11.) In other words, when Abbott entered into the Contract, it did so to fulfill the obligations of a separate contract it had with Genzyme ("Genzyme Contract").[3] (*Id.* at ¶¶ 8–11.) Under the Genzyme Contract, Genzyme would be the sole

---

[1] While repetitive, this Contract and the Amendment will be referred to collectively as "the Contract" or "the original Contract."

[2] While Discount Drugs' complaint stated that the First Contract and the Amendment were attached as exhibits, no exhibits were filed with the complaint. (Compl. ¶ 12.)While a court normally cannot consider documents outside the complaint without converting it into a motion for summary judgment, FED. R. CIV. P. 12(d), an exception applies in this case: Abbott attached these documents—which Discount Drugs referred to in its complaint, which are central to Discount Drugs' claim, and which that are conceded authentic—to its Motion to Dismiss. *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *Tierney v. Vahle*, 734 F.3d 734, 738–39 (7th Cir. 2002); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Therefore, the Court may consider them without converting this Motion into one for summary judgment.

[3] The Genzyme contract actually was entered into by SangStat Medical Corporation ("SangStat"), which was succeed by Genzyme. (Compl. ¶ 8). For the purposes of this Opinion,
(continued...)

distributor of the medications it developed, and Abbott would act as Genzyme's agent when entering into other contracts to sell these products. (*Id.* at ¶ 10.)

As stated, Abbott entered the Contract with Discount Drugs to effectuate this arrangement. The Contract "set forth the terms and conditions upon which [Discount Drugs] w[ould] earn . . . rebates." (Def.'s Mem., Ex. C at 1.) Under the Contract, Discount Drugs agreed to purchase exclusively Genzyme and Abbott's cyclosporine. (Compl. ¶ 13; Def.'s Mem., Ex. C at 2.) The Contract also set Discount Drugs' eligibility for receiving rebates based on its sales of the purchased cyclosporine:

> **Company Eligibility:** Products purchased hereunder are restricted for distribution solely to [Discount Drugs'] eligible retail pharmacies for retail sale to the public in the continental United States, Alaska and Hawaii.

(Def.'s Mem., Ex. C at 2.) Additionally, the Contract contained an integration clause, which stated:

> **Entire Agreement:** This Agreement along with Exhibits A, B, and C (listing of Abbott Products and competitive products by Category) constitutes the entire agreement of the parties and shall supersede any prior agreements and understandings of the parties with respect to its subject matter. This Agreement may not be amended except upon the written agreement of the parties.

(Def.'s Mem., Ex. C at 3.) The Contract also explained how rebates would be paid:

> **Rebate Payment.** Within sixty (60) days after Abbott's receipt of accurate and complete utilization reports for a calender quarter and provided [Discount Drugs] hereunder, Abbott shall pay [Discount Drugs] a Purchase Volume Rebate and a Market Share Rebate . . . .

(Def.'s Mem., Ex. B at 2.)

---

[3](...continued)
the Court refers to SangStat and Genzyme as the same entity, Genzyme.

The complaint alleges that, after entering into the Contract, Discount Drugs' and Abbott's representatives had regular conversations about the quantity and type of sales Discount Drugs was required to make under the Contract. (Compl. ¶ 14.) Discount Drugs alleges that, during these discussions, "representatives of Abbott were made aware that Discount Drugs was selling some of the cyclosporine products to wholesalers." (*Id.* at ¶ 15.) As a result, Discount Drugs claims that Abbott had actual or constructive knowledge that Discount Drugs sold cyclosporine to wholesalers. (*Id.*) Additionally, Abbott "actively encouraged" Discount Drugs to continue these sales, approved the sales, and provided rebates for the sales. (*Id.* at ¶ 16.) Discount Drugs made the same allegations as to Genzyme. (*Id.* at ¶¶ 17–19.)

The problems for Discount Drugs started in September 2003, when it applied to Abbott for rebates but was rebuffed, apparently because it had been selling cyclosporine to wholesalers. (*Id.* at ¶ 20.) At this point, Discount Drugs contacted Genzyme to explain its problem redeeming rebates from Abbott. (*Id.* at ¶ 21.) Genzyme explained that it would contact Abbott on Discount Drugs' behalf. (*Id.*)

Discount Drugs alleges that Genzyme either did not contact Abbott or entered into an informal arrangement with Abbott to not pay rebates to Discount Drugs. (*Id.* at ¶ 22.) Based on these events, Discount Drugs alleges that it paid Genzyme the amount of the drugs less the rebates it would have received[4]—and, because Genzyme did not take action for nearly five years, Genzyme agreed to this arrangement. (*Id.* at ¶¶ 23–24.) Based on these allegations, Discount

---

[4] Specifically, the complaint states: "Discount Drugs paid [Genzyme] an amount equal to the cost of the drugs purchased less the value of the rebates to which Discount Drugs was entitled." (Compl. ¶ 23.)

Drugs alleges it is entitled to relief on claims of breach of contract and contribution against Abbott, requesting damages in the amount of $244,533.58. (*Id.* at ¶¶ 25–29.)

## II. Standard on a Motion to Dismiss

Under Federal Rule of Civil Procedure 8 ("Rule 8"), the plaintiff must file a complaint containing a short plain statement showing why the plaintiff is entitled to relief. FED. R. CIV. P. 8(a). A motion to dismiss tests the legal sufficiency of the complaint, not the merits of the claim. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). As this Court has noted, the Supreme Court recently expounded upon the notice pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Jones v. Bull Moose Tube* Co., 2009 WL 3483804, at *3 (N.D. Ill. Oct. 26, 2009) (discussing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Nevertheless, the notice pleading standard remains in tact. *E.g., Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). To state a claim under Rule 8, the plaintiff cannot merely plead bare legal conclusions; the plaintiff must allege factual grounds that entitle it to relief. *Iqbal*, 129 S.Ct. at 1949. This standard is met if "[t]he complaint . . . contain[s] 'enough facts to state a claim to relief that is plausible on its face,' and . . . state[s] sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur*, 581 F.3d at 602 (quoting *Iqbal*, 129 S.Ct. at 1955). That is, the plaintiff must state a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. A claim is plausible if the factual grounds pled permit a court to reasonably infer that the defendant is liable under the plaintiff's theory beyond some speculative level. *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009); *Pinkston-El-Bey v. Illinois*, No. 09-1646, Slip Op. at *1 (7th Cir. Dec. 23,

2009); *Bissessur*, 581 F.3d at 602. The Court undertakes this context-specific inquiry, drawing on its experience and common sense for guidance. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

Additionally, to pass this test, "[c]omplaints need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2004) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)); *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006). In other words, complaints do not need to overcome defenses to survive a motion to dismiss—they merely must meet the notice pleading standard. *U.S. Gypsum*, 350 F.3d at 626. That said, "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citing *Massey*, 464 F.3d at 650). Thus, "[a] plaintiff 'pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" *Id.* (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)). Thus, "[i]f the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." *Id.* at 1074.

### III. Discussion

Before proceeding, the Court notes that it has diversity jurisdiction, and Discount Drugs' claims are based on state law. Therefore, Illinois law—the law of the forum state—governs. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998).

A.  **Breach of Contract**

Discount Drugs alleges that Abbott breached a contract when it failed to honor rebates based on sales of cyclosporine to wholesalers. (Compl. ¶¶ 25–26.) Abbott argues that Discount Drugs' complaint fails to state a claim for breach of contract because the terms of the Contract expressly require Discount Drugs to sell cyclosporine to retailers, not wholesalers. (Def.'s Mem. 5.) This dooms the complaint, Abbott claims, because the complaint alleges breach of the Contract. (Def.'s Reply 4–5.) Thus, Abbott's failure to pay rebates was wholly justified, as Discount Drugs did not fulfill its obligations under the Contract. (*Id.*) In the alternative, Abbott contends that Discount Drugs has failed to plead a new contract that allowed it to sell cyclosporine to wholesalers. (Def.'s Reply at 1–2, 5–11.) Finally, Abbott contends that the Contract's integration clause prevents Discount Drugs from arguing that either a new contract was formed or the Contract was modified. (Def.'s Mem. 5–6.)

Discount Drugs responds by claiming Abbott is equitably estopped from denying the existence of a new contract, and that, even if no new contract exists, the parties validly modified the contract to incorporate sales to wholesalers. (Pl.'s Resp. 7–8.)

1.  <u>Equitable Estoppel</u>

Abbott contends that Discount Drugs failed to plead the issue of equitable estoppel in its complaint, and now seeks to amend its complaint through its response brief. (Def.'s Reply 5–6.) Abbott is correct that Discount Drugs cannot amend its pleadings through its brief, *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."), and so

Discount Drugs' claim for equitable estoppel must fail. Discount Drugs alleged two counts in its complaint: breach of contract and contribution. Because it failed to plead equitable estoppel, it cannot do so now by amending its complaint through briefing.

2. Pleading a New or Modified Contract

While the parties make various arguments, the key issue is whether Discount Drugs' confusingly drafted complaint sufficiently alleges breach of a new or modified contract.[5] Abbott claims that the following language in the complaint does not plead the existence of a new contract, but instead refers to the original Contract:

> Abbott owes Discount Drugs $244,553.58, plus interest and costs representing the balance due for rebates owed by Abbott Laboratories to Discount Drugs pursuant to the parties' Agreement.

(Compl. ¶ 26.) Whether Abbott is correct turns on the meaning of "the parties' Agreement." While it is plausible that this language means the original Contract, it also is plausible that the language means a *new or modified* contract. The previous allegations in the complaint, while not as lucid at the Court would like, plausibly suggest they refer to a new or modified contract between Genzyme, Abbott, and Discount Drugs. Indeed, the paragraph preceding Count I (Breach of Contract) refers to the allegedly new or modified agreement.

It is a separate question, however, whether the complaint adequately alleges the *formation* of a new contract or the *modification* of the original one. Under *Iqbal*, it is not enough for the

---

[5] Abbott's argument that it could not have breached the Contract—which required Discount Drugs to make retail sales only—is irrelevant. Discount Drugs has alleged the existence of a new or modified contract that *allowed* it to sell cyclosporine to wholesalers. Since the original Contract's proscriptions on such sales do not bear on the terms of the allegedly new or modified contract, the Court does not consider this argument.

complaint merely to state, "Defendant and Plaintiff formed a new contract," "Defendant breached the new contract it had with Plaintiff," or "Plaintiff and Defendant modified their original contract." The complaint must provide factual grounds sufficient to make the formation of a new or modified contract plausible on its face.

The issue, then, is whether Discount Drugs adequately alleged the formation of a new contract or the modification of the original one. Under Illinois law, the essential requirements for contract formation and modification are identical:[6] offer, acceptance, and consideration. *Ross*, 880 N.E.2d at 215 ("A valid modification must satisfy all criteria essential for a valid contract, including offer, acceptance, and consideration." (quoting *Nebel, Inc. v. Mid-City Nat'l Bank of Chicago*, 769 N.E.2d 45, 51 (Ill. 2002)); *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180, 189 (Ill. App. Ct. 2004) ("Under Illinois law, a valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration." (citing *Scutt v. LaSalle County Bd.*, 423 N.E.2d 213, 216 (Ill. 1981)). Thus, the question becomes: did Discount Drugs sufficiently allege offer, acceptance, and consideration?

The answer to this question is no. The Court cannot, amidst the haze of jumbled and confusing allegations, find any factual basis for allegations of offer, acceptance, or consideration. There is some reference to a possible agreement between Abbott and Genzyme, but nothing more. Discount Drugs has failed to plead factual grounds supporting the elements of offer, acceptance, or consideration.

---

[6] Contract modification, however, differs from formation of a new contract: a modified contract must retain the original contract's general purpose; a new contract need not do so. *See Ross v. May Co.*, 880 N.E.2d 210, 215 (Ill. App. Ct. 2007).

3. The Integration Clause

Although Abbott as a threshold matter argues that Discount Drugs has pled itself out of court, this is an issue reached only if the Court determines that the pleading requirements have been satisfied. Having determined that Discount Drugs failed to meet those requirements, the Court is not required to comment on Abbott's secondary argument. Nevertheless, because Discount Drugs is given leave to file an amended complaint, the Court addresses this argument to avoid it in a future motion to dismiss. Abbott argues that Discount Drugs pled itself out of court because it attached to its complaint the Contract, which contained an integration clause. (Def.'s Mem. 5–6.) This argument is an affirmative defense: no breach could have occurred because the parties did not, as required by the integration clause, modify the Contract by a writing.

This type of argument requires knowledge of Illinois law's position on integration clauses and their effect. To support its argument, Abbott cites *Bly & Sons, Inc. v. Ethan Allen Interiors*, 2006 WL 2547202 (S.D. Ill. Sept. 1, 2006). The *Bly & Sons* court, however, decided the effect of an integration clause in the context of a motion for summary judgment, not a motion to dismiss.[7] *Id.* at *1, 4–5. Additionally, the decision is not binding on this Court. Thus, there is still the issue of how Illinois law treats integration clauses.

Under Illinois law, courts finding "an explicitly integrated, facially clear, written contract" do not consider extrinsic evidence—and the language of the contract binds the parties.[8] *Air*

---

[7] The court also did not cite any Illinois law on the effect of integration clauses. *Id.* at *4–5.

[8] Integration usually bars parol evidence of "understandings, not reflected in the writings, reached *before or at the time of* [the contracts] execution." *Midwest Builder Distrib., Inc. v. Lord and Esssex*, 891 N.E.2d 1, 18–19 (Ill. App. Ct. 2007) (quoting *J & B Steel Contractors, Inc. v.*
(continued...)

*Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 883, 885 (Ill. 1999); *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (citing *Farm Credit Bank v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991)); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007) (citing *Air Safety*, 706 N.E.2d at 885–86). Even so, parties can, by their conduct, waive express terms of a contract—even an integration clause. *Midwest Builder*, 891 N.E.2d at 28 (explaining waiver and stating that "waiver demonstrated through the course of performance can be effective to change express terms of a contract, . . . even . . . contracts that are fully integrated"). In this case, Discount Drugs is alleging the existence of a new or modified contract based on the conduct of the parties; i.e., based on a waiver. That issue is an evidentiary one and, therefore, is one for either summary judgment or the trial of the case, not a motion to dismiss. Thus, Abbott's affirmative defense fails because it has not shown that Discount Drugs "[pled] facts that establish an impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086.

But there's another reason why the Court should not resolve the integration issue on a motion to dismiss. Beyond merely deciding whether the integration clause is "facially clear," *Air Safety*, 706 N.E.2d at 883, 885; *see Curia*, 587 F.3d at 829–31 (assessing whether ambiguity existed), courts must determine the scope of the clause. *Midwest Builder*, 891 N.E.2d at 20 (determining "the scope of the integration . . . agreements"). Those types of tasks do not merely test the sufficiency of the complaint (i.e., does the complaint allege a new or modified agreement?), they address the merits of the claims themselves (i.e., was a new agreement even possible?). At the motion-to-dismiss juncture, the court assesses the sufficiency, not the merits,

---

[8](...continued)
*C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1217 (Ill. 1994) (emphasis added)). The issue here involves conduct occurring *after* the parties memorialized their agreement.

of the plaintiff's claims. Since determining whether the agreement was fully integrated, and, if so, a waiver occurred, would require the Court to test the merits of Discount Drugs' claims, the Court will not undertake these tasks.

### B.     Contribution

Although Discount Drugs' complaint alleges it is entitled to contribution from Abbott, it doesn't specify under what theory it is so entitled. Abbott addresses two theories of contribution that the complaint could allege: contribution under the Joint Tortfeasor Contribution Act, 740 ILL. COMP. STAT. 100/1 *et seq.* ("Illinois Contribution Act"), and common law contribution. (Def.'s Mem. 8–10.) First, Abbott argues that, because Discount Drugs has not alleged that Abbott is liable in tort, Discount Drugs cannot bring a claim for contribution under the Illinois Contribution Act. (Def.'s Mem. 8.) Second, Abbott contends that Discount Drugs has failed to sufficiently plead a claim for contribution because Discount Drugs "has not alleged—and could not allege—[that Abbott is a joint obligor] because Abbott is no way obligated to Genzyme to pay for Discount Drugs' cyclosporine." (Def.'s Mem. 9–10; Def.'s Reply 15.)

#### 1.     Illinois Contribution Act

The Illinois Contribution Act applies only "where 2 or more persons are subject to liability in tort." 740 ILL. COMP. STAT. 100/2. Properly alleging a right of contribution under the Illinois Contribution Act requires that the defendant and third party both are liable to the plaintiff in tort, and "their liability must arise out of the same injury.'" *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001) (quoting *People v. Brockman*, 592 N.E.2d 1026, 1029 (Ill. 1992)); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2004 WL 2108413, at *2

(N.D. Ill. Sept. 21, 2004). Breach of contract is not an action in tort—it is an action in contract. Thus, Discount Drugs has not sufficiently pled a claim under the Illinois Contribution Act because it has not alleged that Abbott is liable in tort.

2. Common Law Contribution

Discount Drugs' common law contribution claim meets the same fate as its claim under the Illinois Contribution Act: death. A claim for common law contribution exists where (1) two or more parties are jointly obligated to pay another and (2) a joint obligor pays more than his share of the obligation. *Aardema v. Fitch*, 684 N.E.2d 884, 890 (Ill. App. Ct. 1997) ("In an action for common law contribution, the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation." (quoting *Ruggio v. Ditowsky*, 498 N.E.2d 747, 750 (Ill. App. Ct. 1986)).

The issue here is whether Abbott and Discount Drugs were joint obligors to Genzyme. Abbott claims that the complaint fails because it is similar to "*Canadian Pacific*, . . . where there was no allegation or basis for a claim of 'joint obligation.'" (Def.'s Reply 15.) In other words, the complaint fails because "[Discount Drugs] ha[s] not alleged joint obligation (and could not allege joint obligation[)]." (Def.'s Reply 15.) The question, as noted above, is not whether Discount Drugs' claim is meritorious—the Court looks only to whether the complaint adequately pleads a cause of action.

Here, the Court already has found that the complaint failed to state a claim for breach of a new or modified contract. With that finding in mind, it is impossible to discern the parties roles in the alleged new contract and the obligations running between them. Thus, it is impossible to

delve further into the common-law contribution theory at this point in the lawsuit. Therefore, the Court dismisses Count II without prejudice.

## IV. Conclusion

Based on the foregoing, this Court grants Defendant's Motion to Dismiss. The Court dismisses Counts I (Breach of a Modified Contract) and II (Contribution) of Plaintiff's complaint without prejudice. Plaintiff is given leave to file an amended complaint within fourteen (14) days.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: February 26, 2010.