IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GENZYME CORPORATION,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**DISCOUNT DRUGS WISCONSIN, INC.,** )<br>)<br>Defendant. )<br>_____)<br>)<br>**DISCOUNT DRUGS WISCONSIN, INC.,** )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>**ABBOTT LABORATORIES, INC.,** )<br>)<br>Third-Party Defendant. ) | Case No. 08 C 5151<br><br>Magistrate Judge<br>Martin C. Ashman |

## MEMORANDUM OPINION AND ORDER

Genzyme Corporation ("Genzyme") sued Discount Drugs Wisconsin, Inc. ("Discount Drugs") for breach of contract and conversion. Acting as third-party plaintiff, Discount Drugs subsequently filed suit against Abbott Laboratories, Inc. ("Abbott"), alleging breach of contract and contribution. On February 26, 2010, this Court dismissed Discount Drugs' Original Third-Party Complaint ("Original Complaint") without prejudice and allowed the company to amend its pleading. *See Genzyme Corp. v. Discount Drugs Wisconsin, Inc.*, No. 08 C 5151, 2010 WL 744275 (N.D. Ill. Feb. 26, 2010). Before the Court now is Abbott's Motion to Dismiss Discount Drugs' First Amended Third-Party Complaint ("Amended Complaint") pursuant to

Fed. R. Civ. P. 12(b)(6). The parties have consented to have this Court conduct all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c); N.D. Ill. R. 73.1. For the reasons discussed below, the Court finds that Abbott's Motion should be granted in part and denied in part.

## I. Background

The facts underlying the dispute between Genzyme, Discount Drugs, and Abbott were discussed in detail in the Court's February 26 Order and are repeated here only insofar as necessary to address Abbott's second Motion to Dismiss.[1] Abbott and Genzyme manufacture and sell a range of cyclosporine drugs, including Genzyme's name-brand drug Gengraf. Prior to the events relevant to this case, Genzyme and Abbott entered into an agreement whereby Abbott would act as Genzyme's exclusive distributor for Gengraf.[2] Accordingly, Abbott developed a program promoting Gengraf under which retail pharmacies could purchase the drug from Genzyme at a discounted price and receive rebates through Abbott on the amount of Gengraf sold to retail buyers.

Discount Drugs entered into such an agreement with Abbott on November 12, 2001 ("the contract" or "the first contract"). Abbott offered below-market prices to Discount Drugs on its 25

---

[1] The factual background is taken from allegations in the Amended Complaint. The Court takes these allegations as true only for the purpose of deciding the instant motion and does not make findings of fact.

[2] The contract was executed between Abbott and Genzyme's predecessor-in-interest, SangStat Medical Corporation ("SangStat"). (Compl. at ¶ 8). For the purposes of this Opinion, the Court refers to SangStat and Genzyme as the same entity, Genzyme.

mg and 100 mg Gengraf capsules and offered two forms of rebate.[3] In return, Discount Drugs agreed to a number of conditions, the most important of which required Discount Drugs to distribute the Gengraf it bought under the contract from Genzyme only through Discount Drugs' retail pharmacy stores. The contract states:

> **Company Eligibility**: Products purchased hereunder are restricted for distribution solely to Company's [i.e. Discount Drugs'] eligible retail pharmacies for retail sale to the public in the continental United States, Alaska and Hawaii. Before pricing hereunder is made available to Company, Company must provide to Abbott a listing of store locations including name, address, city, state, zip, NABP#, and DEA#. This list must be updated during the term of this Agreement as changes occur.

(Compl., Ex. 1.)

Abbott and Discount Drugs both agree that they subsequently extended the contract's termination date to June 30, 2004 and added a liquid form of Gengraf to the list of products eligible for the discount and rebates ("the second agreement"). They vigorously disagree, however, whether they amended the contract a second time. The Amended Complaint alleges that Abbott's "sales representatives and others at Abbott acting in a managerial capacity, encouraged, and promoted Discount Drugs to also sell to wholesalers in addition to retail customers." (Amend. Compl. at ¶ 16.) Abbott did so, Discount Drugs alleges, with the "express knowledge" that Discount Drugs would apply for rebates on sales made to wholesalers. (*Id.*; Pltf.'s Resp. at 4-5.) Discount Drugs contends that Abbott encouraged it on more than one occasion to sell Gengraf to wholesalers; helped Discount Drugs prepare the quarterly reports it

---

[3] The first provided for a 14.2% "Purchase Volume Rebate" of Gengraf bought from Genzyme. The second involved a "Market Share Rebate" under which Discount Drugs would receive a 4.8% rebate for Gengraf sales that constituted more than 40% of the total cyclosporine drugs sold by Discount Drugs, and a 9.5% rebate on Gengraf sales in excess of 70% of Discount Drugs' cyclosporine sales to retail pharmacies.

was required to file to obtain rebates; and even paid rebates on Gengraf sales to wholesalers "for a time." (Amend. Compl. at ¶¶ 18-19.) According to Discount Drugs, Abbott's oral representations, together with Discount Drugs' reliance on them, constitute a third agreement that is binding on the parties ("the third agreement"). (*Id.* at ¶ 16.)

Discount Drugs acted on what it believed to be a new agreement in September, 2003 when it tried to collect rebates from Abbott on its Gengraf sales to both retailers and wholesalers. Abbott, however, refused to pay because Discount Drugs had sold some Gengraf products to wholesalers. (*Id.* at ¶ 23.) In turn, Discount Drugs refused to pay Genzyme the full amount it owed for its Gengraf purchases, deciding instead to deduct the amount it believed was owed by Abbott in rebates under the alleged third contract. (*Id.* at ¶ 26.) Genzyme subsequently filed this suit against Discount Drugs to recover $244,533.58 allegedly owed by Discount Drugs under the first contract. As stated above, Discount Drugs filed its third-party action against Abbott seeking the same amount of $244,533.58 in unpaid rebates.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for the dismissal of a cause of action for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions are analyzed in conjunction with the legal standard set forth in Rule 8, which requires that a complaint give the defendant fair notice of what the plaintiff's claims are and the grounds on which they rest. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002). In reviewing a motion under Rule 12(b)(6), a court accepts a complaint's fact allegations as true and draws all reasonable inferences in the plaintiff's favor. *Pugh v. Tribune*

*Co.*, 521 F.3d 686, 692 (7th Cir. 2008). A plaintiff's legal conclusions, however, are not taken as true. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).

A complaint survives a Rule 12(b)(6) challenge when it contains sufficient factual material "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not be stated in such detail that it is probable the plaintiff will prevail; indeed, a complaint can survive dismissal "even if it strikes a savvy judge that actual proof of [its] facts is improbable[.]" *Id.* at 556. A plaintiff need only allege sufficient facts for a court to conclude there is a reasonable expectation that discoverable evidence will support the complaint's allegations. *Id.*

### III. <u>Discussion</u>

As a preliminary matter, Discount Drugs argues that *Twombly*'s plausibility standard for surviving a Rule 12(b)(6) challenge is higher when applied to cases involving complex matters, but is lower when, as here, a relatively simple contract is at issue. (Pltf.'s Resp. at 3.) Some courts were concerned after *Twombly*, which involved an antitrust suit, that a lower standard might apply to cases with a less complex factual and legal basis. *See Arista Records LLC v. Does 1-27*, 584 F. Supp.2d 240, 245-46 (D. Me. 2008) (questioning, but ultimately rejecting, whether *Twombly* imposed a "sliding scale" of plausibility). The Seventh Circuit has rejected such an interpretation by holding that *Iqbal* extended *Twombly*'s plausibility standard from complex cases "to litigation in general."[4] *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

---

[4] The Seventh Circuit recently noted that complex cases require "more detail" to give the opposing party notice of a claim. *Swanson v. Citibank*, — F.3d —, No. 10-1122, 2010 WL
(continued...)

Accordingly, Discount Drugs' argument that the Court should apply a lower plausibility standard than the one provided for in *Twombly* contravenes binding precedent in this Circuit.[5]

A.  **Breach of Contract**

In its Original Complaint, Discount Drugs alleged that Abbott representatives were "made aware" that Discount Drugs was selling some Gengraf to wholesalers and thus had constructive knowledge of it; that Abbott encouraged Discount Drugs to continue these sales; and that Abbott paid Discount Drugs some rebates. *See Genzyme*, 2010 WL 744275, at *2. The Court dismissed the Third-Party Complaint because these allegations did not sufficiently state factual grounds for finding the three essential elements for contract formation or modification under Illinois law: offer, acceptance, and consideration. *Id.*; *see also Ross v. May Co.*, 377 Ill.App.3d 387, 391, 880 N.E.2d 210, 215 (Ill.App.Ct. 2007) ("A valid modification must satisfy all criteria for a valid contract, including offer, acceptance, and consideration.") (internal quotation and citation omitted). The Court noted that *Iqbal* requires more than conclusory allegations that a contract was formed. Discount Drugs must also state the ground that makes its contract claims plausible.

---

[4](...continued)
2977297, at *3 (7th Cir. July 30, 2010). The Court did not, however, alter its prior finding that *Twombly*'s standard applies uniformly to simple and complex litigation.

[5] Discount Drugs also invokes a non-legal source to justify the concision of its Amended Complaint – Shakespeare. Citing the counselor Polonius from *Hamlet*, Discount Drugs invites the Court to consider his maxim that "since brevity is the soul of wit / And tediousness the limbs and outward flourishes / I will be brief." William Shakespeare, *Hamlet*, act 2, sc. 2. Reading the play further, the Court notes that reliance on the Immortal Bard is misplaced in this instance: Polonius famously defied his own advice at every turn and was murdered by Hamlet for being a "wretched, rash, intruding fool." *Id.*, act 3, sc. 4. The Amended Complaint comes close to a similar fate here, but for the reasons discussed below its brevity is not too fatally concise for portions of it, unlike the Danish court in *Hamlet*, to survive.

*Genzyme*, 2010 WL 744275, at *4; *see also Iqbal*, 127 S.Ct. at 1955 (stating that a "formulaic recitation of a cause of action's elements will not do.").

Abbott contends that the Amended Complaint suffers from the same deficiency as its predecessor and does not sufficiently allege offer, acceptance, and consideration. This argument clearly fails as it relates to consideration. Unlike the Original Complaint's silence on this issue, the Amended Complaint specifically alleges: "The consideration for the Third Agreement was increased sales for both parties to an entirely new segment of the marketplace, which resulted in increased revenue for Abbott and additional rebates for Discount Drugs." (Amend. Compl. at ¶ 17.) Illinois law recognizes three forms of consideration: a detriment to the offering party, a benefit to the accepting party, or a bargain negotiated between the parties to a contract. *See Doyle v. Holy Cross Hosp.*, 186 Ill.2d 104, 105, 708 N.E.2d 1140, 1145 (Ill. 1999) ("Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them."). Discount Drugs alleges both the second and third forms of consideration, claiming that it received the opportunity to increase its rebates from Abbott and that the two parties mutually benefited from their new bargain. As such, Discount Drugs has sufficiently alleged that consideration between the parties supports the third agreement.

Abbott makes a more focused attack on the issues of offer and acceptance, arguing first that the Amended Complaint fails to include any new allegations other than that Abbott had "knowledge and understanding that Abbott would pay" rebates for both retail and wholesale sales. (Def's. Mem. at 7) (quoting Amend. Compl. at ¶ 16.) This argument also fails insofar as Abbott contends that the Amended Complaint – read literally – does not include new fact

allegations. Discount Drugs' new pleading plainly alleges such facts. For example, Discount Drugs originally alleged that Abbott representatives actively encouraged it to sell Gengraf to wholesalers. (Orig. Compl. at ¶ 16.) The Amended Complaint enlarges the range of who these representatives were, includes new language on the nature of their encouragement, and expands the scope of the timeframe during which Abbott's alleged activity occurred:

> Over the continued course of the parties' dealings, the sales representatives, and others at Abbott acting in a managerial capacity, continued to encourage Discount Drugs to make sales to wholesalers under the Third Agreement; assisted Discount Drugs in the preparation of the quarterly reports and market share information; and implicitly and explicitly led Discount Drugs to make the sales to wholesalers under the Third Agreement with the understanding that Discount Drugs would receive rebates for sales to wholesalers in the amount consistent with payment under the formula set forth in The First Agreement and The Second Agreement.

(Amend. Compl. at ¶ 18.)

The essence of Abbott's objection to these allegations is their lack of specificity. Abbot claims that Discount Drugs does not state in concrete terms the offer Abbott allegedly made or identify the representatives of Abbott and Discount Drugs responsible for forming the third agreement.[6] It also argues that the Amended Complaint fails to comply with this Court's order to supply specific facts regarding offer and acceptance and, as a result, Discount Drugs fails to "demonstrate" the existence of an enforceable agreement. (Def's. Mem. at 2-3.)

---

[6] The parties debate in some detail whether Discount Drugs' interrogatory answers identify the employees involved. Both Abbott and Discount Drugs overlook that evidentiary issues are irrelevant to the Motion to Dismiss. "[W]hen dismissing a complaint for failure to state a claim under Rule 12(b)(6), the . . . court may not look to materials beyond the pleading itself." *Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996). Doing so would require the Court to convert Abbott's Rule 12 motion into one for summary judgment. Fed. R. Civ. P. 12(d); *Alioto*, 77 F.3d at 936.

These arguments do not properly address what a litigant must plead to comply with *Twombly* and *Iqbal*. A plaintiff like Discount Drugs is not required to "demonstrate" in its pleading that the parties entered into a new contract, as Abbott contends. "To survive a motion to dismiss under Rule 12(b)(6), the plaintiff does not have to 'show' anything," the Seventh Circuit has stated; "he need only allege." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (finding that requiring a plaintiff to "show" or "establish" facts in a pleading confuses Rule 12(b)(6) with Rule 56). Moreover, this Court did not ask Discount Drugs to allege "specific facts" but rather to plead "factual grounds" that would make its contract modification claim plausible. *See Genzyme*, 2010 WL 744275, at *4. The Court phrased its order as it did in recognition that *Twombly* and *Iqbal* have not done away with the notice pleading standard of Fed. R. Civ. P. 8. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact."). Notice pleading does not always require the kind of specificity Abbott argues is missing in this case; a plaintiff's allegations "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint must allege sufficient facts to provide such a ground, *id.*, *Twombly* teaches that those facts need only be concrete "enough . . . to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Twombly*, 550 U.S. at 556; *see also Erickson*, 551 U.S. at 93 ("*Specific* facts are not necessary[.]") (emphasis added).

These principles lead the Court to find that, although far from ideal, the Amended Complaint satisfies Rule 12(b)(6). The pleading is not, as Abbott contends, merely a repetition

of what is required to state a contract action. (Def's. Mem. at 7.) Abbott overlooks that the Seventh Circuit has explained what such a formulaic breach of contract pleading would look like and what a plaintiff must allege to survive dismissal: "A plaintiff may not escape dismissal on a contract claim . . . by stating that he had a contract with the defendant, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach?" *Bissessur*, 581 F.3d at 603. Discount Drugs does not make such bare allegations of contract formation and breach. Instead, the Amended Complaint answers *Bissessur*'s questions in a way the Original Complaint did not. The first pleading, for example, failed to make even conclusory allegations of consideration and offer; the Amended Complaint expressly pleads consideration and states that Abbott offered to pay rebates on Gengraf sold to wholesalers at the same rate as rebates were paid under the first contract and also breached its promise by refusing to do so. (Amend. Compl. at ¶¶ 29, 32.)

The Amended Complaint further alleges that Abbott managers, who presumably had authority to bind the company, expressly "solicited" Discount Drugs to sell Gengraf to wholesalers. (*Id.* at ¶ 16.) "Solicit" is defined as "to make a petition to" and "to approach with a request or plea." Merriam-Webster's Collegiate Dictionary 1187 (11th ed. 2003). Seen in the light most favorable to Discount Drugs, therefore, the Amended Complaint sufficiently alleges that Abbott offered to expand the terms of the original contract – which expressly forbids wholesale sales of the Gengraf Discount Drugs bought at discounted prices – to wholesalers and did so with at least the implied promise to pay rebates for such sales.

The same is true for acceptance. Abbott argues that the Amended Complaint fails because it does not allege that Discount Drugs "expressly accepted" Abbott's offer. (Reply at 5.)

The new pleading, however, states that Discount Drugs "accepted this offer and made sales to wholesalers during the course of the parties' relationship." (Amend. Compl. at ¶ 30.) Although brief, this allegation is not entirely conclusory. Discount Drugs identifies the nature of the acceptance (sales to wholesalers) and claims it made these sales only after Abbott "solicited" the sales and helped Discount Drugs to submit applications for rebates not provided under the first contract. (*Id.* at ¶ 16.) The company also alleges that the parties continued this pattern of solicitation and response throughout the course of their dealings: Discount Drugs acted on its acceptance by applying for wholesale rebates, and Abbott kept its promise by paying them for a time. (*Id.* at ¶¶ 18-19.)

Abbott provides no argument on why Discount Drugs' allegations are insufficient to provide notice of acceptance under Illinois law. While Rule 12(b)(6) controls the standard under which Discount Drugs must give notice of its contract claim, the elements of the claim itself are governed exclusively by state law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). It is well established in this state that "[t]he conduct of the parties will suffice to show agreement to the terms of the contract." *Kirchhoff v. Rosen*, 227 Ill.App.3d 870, 889, 592 N.E.2d 371, 376 (Ill.App.Ct. 1992); *see also Volk v. Kendall*, 71 Ill.App.3d 211, 213, 389 N.E.2d 697, 699 (Ill.App.Ct. 1979) ("Just as contracts may be implied from the conduct of the parties, so may a rescission of contracts be implied therefrom. Words amount to very little where actions are conclusive.") (internal quotation and citation omitted). Discount Drug's allegations give rise to a reasonable possibility that discovery might show that it acted in response to Abbott's "solicitation" and sold Gengraf to wholesalers in the expectation of being paid rebates. *See Twombly*, 550 U.S. at 556. In the absence of any argument from Abbott that

this fails to allege acceptance under Illinois law, the Court finds that Discount Drugs has stated sufficient facts to avoid dismissal on this ground.

Finally, Abbott contends that dismissal is still warranted because Discount Drugs' claim of a third agreement "defies credibility." (Reply at 12.) It would make no sense for the parties to have entered the third agreement covering wholesalers, Abbot argues, because Abbott does not recognize a sale until retail pharmacies actually sell Gengraf to a customer. Thus, any "sale" of Gengraf to a wholesaler would not be entitled to a rebate because it was "never sold at all." (Def's. Mem. at 9.) This argument, however, fails to fully account for the plausibility standard under Rule 12. "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson*, — F.3d —, 2010 WL 2977297, at *3. A court assumes the truth of a plaintiff's fact allegations, does not consider their probability, and asks if the plaintiff has provided sufficient facts "to present a story that holds together." *Id.* Thus, whether the parties are likely to have amended the first contract's language that limited sales to retail pharmacies is irrelevant at this stage. The question is whether, under the facts alleged, the parties could have amended the contract to encompass sales to wholesalers. *See id.* ("[T]he court will ask itself *could* these things have happened, not *did* they happen.").

Abbott presses its argument further by claiming that it would be absurd to believe the parties could ever have amended the first contract's terms because they were plainly intended to apply only to retail pharmacy sales. Quoting *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856 (7th Cir. 2002), Abbott states that "[i]f literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided." *Beanstalk*,

283 F.3d at 860 (internal quotation and citation omitted). *Beanstalk*, however, contradicts rather than supports Abbott's argument. That case found that a breach of contract action can be dismissed pursuant to Rule 12(b)(6) when extrinsic evidence is not required to show that a plaintiff's claim involves an absurd interpretation of the contract's plain language. In its discussion, however, the Seventh Circuit distinguished between two types of contract interpretation. The first requires only "a general knowledge of how the world operates, including the commercial world," for a court to determine that the plaintiff's interpretation is unsound. *Id.* at 862. When this kind of interpretation is possible, a contract claim may be subject to dismissal because no extrinsic evidence is required. The second form of interpretation, however, requires "trial-type evidence" involving the specific "adjudicative facts" at issue under the contract and is not subject to a Rule 12(b)(6) dismissal. *Id.*

In this case, Discount Drugs alleges that it sold Gengraf to wholesalers and bargained for a rebate on those sales. These statements are not so implausible on their face that the court can determine in the absence of any independent evidence that the contract claim should be dismissed. Courts do not have the kind of "general knowledge" *Beanstalk* speaks of to understand how pharmaceutical companies market cyclosporine drugs; how such drugs are distributed between companies, wholesalers, and retailers; or all the reasons why manufacturers and retailers may choose to enter rebate agreements. Extrinsic evidence may show any number of things in this case ranging from the non-existence of the third agreement to the possibility that Abbott and Discount Drugs entered into an ill-conceived contract that was commercially unwise. As *Beanstalk* recognizes, "parties *can* contract for preposterous terms" and be held to their agreement even when evidence shows "that something silly was actually intended." *Id.* at 860

(internal quotation and citation omitted). The Court cannot consider at this stage what evidence will support or refute the parties' claims related to the third agreement, and as a result it cannot find that Discount Drugs' alleged facts are so implausible as to warrant dismissal.

### B.     Promissory Estoppel

Unlike its predecessor, the Amended Complaint also alleges that Abbott is promissorily estopped from refusing to pay rebates on the Gengraf Discount Drugs sold to wholesalers. Under Illinois law, a party alleging promissory estoppel must show: (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff relied on the promise; and (3) such reliance was both reasonable and (4) detrimental to the plaintiff. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill.2d 46, 51, 906 N.E.2d 520, 523-24 (Ill. 2009). Promissory estoppel applies when consideration does not support contract formation, although it requires a showing of both offer and acceptance to succeed. *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005); *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 57 Ill.2d 120, 124, 311 N.E.2d 138, 140 (Ill. 1974).

The Amended Complaint alleges that "Abbott unambiguously promised that it would pay Discount Drugs rebates for the sale of cyclosporine products to wholesalers, with the payment amounts identical to those set forth in The First Agreement and The Second Agreement." (Amend. Compl. at ¶ 36.) As Abbott notes, no other portion of the Amended Complaint states facts that directly support the claim in Paragraph 36 that Abbott unambiguously promised to pay rebates. Instead, Discount Drugs alleges that Abbott solicited the company to make such sales "with the express knowledge and understanding that Discount Drugs would be applying for

rebates." (*Id.* at ¶ 16.) The estoppel claim fails, Abbott argues, because knowledge and understanding are not the same as an unambiguous promise to pay.

Discount Drugs' allegations give the Court some pause. Paragraph 36 specifically identifies the promise Abbott purportedly made, but the paucity of supporting fact allegations in the rest of the pleading brings Paragraph 36 dangerously close to being conclusory. In considering this matter, however, the Court notes two principles that guide a Rule 12 dismissal. First, a court does not invent arguments for the litigants. *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Thus, the Court limits its examination of the promise issue to Abbott's sole argument on the topic: Discount Drugs fails to identify the Abbott employee made such a promise or the Discount Drugs employee to whom the promise was made. (Def's. Mem. at 10-11.) Second, a court must consider "whether a plaintiff's allegations could provide relief under *any* available legal theory."[7] *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Examining the Amended Complaint with these principles in mind, the Court concludes that it does state a claim for promissory estoppel – though just barely. As with the contract issue, Abbott does not address the full scope of Illinois law on promissory estoppel. An unambiguous promise is clearly required, but the promise need not be express in the way Abbott states. In the context of promissory estoppel, "[a] promise may be inferred from conduct and words." *Falk v.*

---

[7] The Court recognizes that Discount Drugs has not explicitly relied on the case authorities cited by the Court below. Nevertheless, "[t]he complaint need not support a viable claim only under the particular legal theory intended by the plaintiff." *Arst*, 15 F.3d at 421. In light of the disfavored nature of dismissal, and construing the Amended Complaint in favor of Discount Drugs, the Court finds that the Amended Complaint alleges sufficient facts to give notice of a promissory estoppel claim under the well-established legal authorities cited.

- 15 -

*U.H.H. Home Services Corp.*, 835 F. Supp. 1078, 1080 (N.D. Ill. 1993). *See also Stuart Park Assoc. Ltd. Psp. v. Ameritech Pension Trust*, 846 F. Supp. 701, 712-13 (N.D. Ill. 1994) ("[A] cause of action for promissory estoppel lies only when the defendant *makes* an unambiguous promise or unambiguously *conveys* to the plaintiff a promise through its conduct."); *Derby Meadows Utility Co., Inc. v. Inter-Continental Real Estate*, 202 Ill.App.3d 345, 361, 559 N.E.2d 986, 995 (Ill.App.Ct. 1990) (stating that promissory estoppel consists "of words or conduct by one party which is expected or intended to cause action or forbearance on the part of another party[.]").

Liberally construed, the Amended Complaint sufficiently alleges conduct by Abbott that could constitute a promise to pay rebates on wholesale sales of Gengraf. Discount Drugs contends that Abbott helped it fill out applications for rebates on wholesale sales, encouraged it to make these sales throughout the parties' course of dealing, and even paid some wholesale rebates. The Court expresses no opinion on the truth or the probability of these allegations. But if discovery supports them, it is plausible that such conduct could "convey" an unambiguous promise to pay wholesale rebates, *Stuart Park*, 846 F. Supp. at 712-13, particularly in light of the allegation that Abbot, in fact, paid them for a time. That is all that *Twombly* and *Iqbal* require to survive a Rule 12(b)(6) challenge. *See Swanson*, — F.3d —, 2010 WL 2977297, at *3.

Abbott also argues that reliance on its alleged promise was unreasonable as a matter of law because oral statements cannot alter a contemporaneously executed contract under Illinois law.[8] (Def's. Mem. at 11-12.) This argument has little bearing on the case because it only

---

[8] Abbott's reliance on *Hayes & Griffith, Inc. v. GE Capital Corp.*, No. 88 C 10179, 1989 WL 135246 (N.D. Ill. Oct. 24, 1989) for support of this proposition is misplaced. *Hayes &* 
(continued...)

restates the familiar parol evidence rule. *See J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 270, 642 N.E.2d 1215, 1217 (Ill. 1994) (stating that the rule "precludes evidence of understandings, not reflected in a writing, reached before or at the time of [the contract's] execution which would vary or modify its terms."). Discount Drugs, however, does not rely on statements arising at the time the first contract was made but on subsequent statements that allegedly modified the parties' original agreement. Illinois law recognizes that the parties to a contract can enter into a later oral modification. *South Shore Amusements, Inc. v. Supersport Auto Racing Ass'n*, 136 Ill.App.3d 284, 287, 483 N.E.2d 337, 340 (Ill.App.Ct. 1985) ("That parties to a written contract may alter or modify its terms by a subsequent oral agreement is well established."). Moreover, Discount Drugs does not merely allege that Abbott promised to alter the parties' pre-existing contract. It claims that Abbott engaged in a course of dealing that was *itself* at complete odds with the original contract. Thus, the Amended Complaint pleads sufficient facts to satisfy the elements required for promissory estoppel.

### C. Common Law Contribution

In its prior Order, the Court dismissed Discount Drugs' contribution allegations, in part, because the Original Complaint failed to distinguish between common law contribution and an

---

[8](...continued)
*Griffith* found that a plaintiff could not reasonably rely on oral assurances that were at odds with two executed documents establishing the business terms between the parties. *Hayes & Griffith*, 1989 WL 135246, at *7. In that case, however, the two other documents contained language expressly stating that the agreements were non-binding, and the court found that it was unreasonable to believe that a subsequent oral agreement would alter that fact. *See id.* In this case, Discount Drugs alleges the parties amended a binding agreement, thereby making the amended contract itself binding.

action under the Illinois Contribution Act, 740 Ill. Comp. Stat. 100/2. Discount Drugs now alleges that it is entitled to common law contribution from Abbott under the various contracts between the parties. (Amend. Comp. at ¶ 43.) A claim for common law contribution exists where (1) two or more parties are jointly obligated to pay another and (2) a joint obligor pays more than his share of the obligation. *Aardema v. Fitch*, 291 Ill.App.3d 917, 925, 684 N.E.2d 884, 890 (Ill.App.Ct. 1997). Unlike a claim under the Illinois Contribution Act, which requires tort liability, common law contribution can arise under Illinois law between parties that are not tortfeasors. *See, e.g., Ruggio v. Ditkowsky*, 147 Ill.App.3d 638, 640, 498 N.E.2d 747,749 (Ill.App.Ct. 1986) (recognizing common law contribution between joint obligors on promissory notes). Although Discount Drugs has not responded to Abbott's Motion on this issue, the first contract does not show any ground for finding joint liability between Abbott and Discount Drugs. Indeed, the Amended Complaint does not allege that the parties are jointly liable to Genzyme for any payments. As a result, Discount Drugs has not alleged facts that support a contribution claim.

## IV. Conclusion

For all these reasons, the Court finds that Abbott's Motion to Dismiss (Dckt. # 65) is granted in part and denied in part. In light of the fact that Discount Drugs has already been given an opportunity to amend its contribution claim, the Court finds that its failure to make even conclusory allegations supporting common law contribution would make further leave to amend

futile. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Thus, Count III (contribution) is hereby dismissed with prejudice.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: September 13, 2010.